**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
HUNG NGUYEN,

                                                    Plaintiff,

                    -against-

PHO VIETNAM 87 CORPORATION, et al.,

                                                    Defendants.
-----------------------------------------------------------------X

**23-CV-4298 (JLR) (VF)**

**REPORT AND**
**RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**TO: THE HONORABLE JENNIFER L. ROCHON, United States District Judge.**

        In this action filed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.,

New York Labor Law ("NYLL") § 650 et seq., and New York's Wage Theft Prevention Act

("WTPA"), NYLL § 195, Plaintiff Hung Nguyen seeks payment of unpaid wages and related

relief against Defendants Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King

Chong Food Market, Inc., JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, Nancy Huynh, Chu

Fun Shin, and Chin Hun Chong (collectively, "Defendants"). ECF No. 23 (Amended

Complaint). Plaintiff, who was employed as a waiter at Pho 87 Vietnam, alleges that during his

employment Defendants failed to pay him minimum and overtime wages under the FLSA and

NYLL, spread-of-hours pay under the NYLL, failed to provide wage notices and wage

statements under the WTPA, and unlawfully appropriated his tips. After Defendants were served

with the Amended Complaint but failed to appear in this action, the Clerk of the Court entered

Certificates of Default. ECF Nos. 25-33, 57-65. Before the Court is Plaintiff's motion for default

judgment (ECF No. 70), which the Honorable Jennifer L. Rochon has referred to the undersigned

for this report and recommendation. ECF No. 74. For the reasons stated below, I respectfully

recommend that Plaintiff's motion be **GRANTED** with regards to all Plaintiff's claims except

for his WTPA claim, and that Plaintiff be awarded judgment against Defendants as outlined below.

## **BACKGROUND**

A.  Factual Background

Unless otherwise indicated, the Court summarizes the facts from the Amended Complaint and the submissions by Plaintiff in support of damages, including Plaintiff's affidavit attesting to his hours worked and other facts about his employment at Pho 87 Vietnam. ECF Nos. 72-73. Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Amended Complaint, except as to damages. See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).

Plaintiff was employed as a waiter at Pho 87 Vietnam, a restaurant located at 87 Chrystie Street in Manhattan, from May 2022 through May 2023. ECF No. 23 at ¶¶ 6-7, 91-92; ECF No. 72 at ¶¶ 3-4. Plaintiff worked six days a week, 12 hours a day, from approximately 9 a.m. to 9 p.m. ECF No. 23 at ¶ 92; ECF No. 72 at ¶ 4. Plaintiff was paid a fixed salary of $85 per day. ECF No. 23 at ¶ 93; ECF No. 72 at ¶ 5. When Defendants hired Plaintiff they did not provide him a wage notice; when Defendants paid Plaintiff his wages, they did not provide him a wage statement. ECF No. 23 at ¶¶ 105-07; ECF No. 72 at ¶¶ 18, 20-22. When Plaintiff worked ten or more hours in a day, Defendants did not pay him one hour at the minimum wage rate. ECF No. 23 at ¶ 133; ECF No. 72 at ¶ 18.

Plaintiff alleges that Pho Vietnam 87 Corporation, Pho Vietnamese Restaurant Inc., JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, and King Chong Food Market, Inc. (collectively, the "Corporate Defendants") are domestic corporations organized under the laws of New York, with annual business that exceeds $500,000, and are engaged in interstate commerce by buying and selling goods that originated outside of New York. ECF No. 23 at ¶¶ 9-10, 15-16, 21-22, 27-28, 33-34, 39-40. Defendants Huynh, Shin, and Chong own and oversee the operations of Pho 87 Vietnam, and hired, fired, and paid all employees. ECF No. 23 at ¶¶ 46-48, 51-53, 56-58. In April 2023, Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King Chong Food Market, Inc., Huynh, and Shin sold the restaurant to JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, and Chong. ECF No. 23 at ¶ 60. Plaintiff further alleges that Defendants were his employer under the FLSA and NYLL. ECF No. 23 at ¶¶ 8, 11-14, 17-20, 23-26, 30-32, 35-38, 41-44, 49. 54, 59, 83.

B. Procedural Background

On May 23, 2023, Plaintiff commenced this action against Defendants. ECF No. 1. On November 1, 2023, Plaintiff filed the Amended Complaint. ECF No. 23. Plaintiff served an amended summons and the Amended Complaint on Defendants, who failed to answer, move, or otherwise respond. ECF Nos. 25-34. On December 12, 2023, the Clerk of the Court entered a Certificate of Default as to all Defendants. ECF Nos. 57-65. On March 14, 2024, Plaintiff filed a motion for default judgment. ECF Nos. 70-73. Plaintiff served his motion on Defendants, and Defendants failed to respond. ECF No. 76. To date, no Defendant has appeared in this action.

3

# DISCUSSION

A. Legal Standards

1. *Obtaining a Default Judgment*

"A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55." Ortega v. Frozen Deli & Grocery Inc., No. 24-CV-1231 (JLR) (SLC), 2024 WL 4751732, at *3 (S.D.N.Y. Oct. 22, 2024) (citing Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186-87 (2d Cir. 2015) (*per curiam*)), adopted by, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a Certificate of Default. See Fed. R. Civ. P. 55(a). Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (*per curiam*), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18-CV-2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Island, Inc., No. 10-CV-4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting

party has presented a meritorious defense." Avail 1 LLC v. Latief, No. 17-CV-5841 (FB)

(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020) (citing Swarna v. Al-Awadi, 622

F.3d 123, 142 (2d Cir. 2010)), adopted by, 2020 WL 5633099 (E.D.N.Y. Sept. 21, 2020); see

Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set

aside a default or a default judgment are the same, courts apply the factors more rigorously in the

case of a default judgment [ ] because the concepts of finality and litigation repose are more

deeply implicated in the latter action").

## 2. *Determining Liability*

A defendant's default is deemed "a concession of all well-pleaded allegations of

liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015),

but "[a] default only establishes a defendant's liability if those allegations are sufficient to state a

cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F.

App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the

allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the

Court finds that the well-pleaded allegations establish liability, the Court analyzes "whether

[p]laintiff has provided adequate support for the relief it seeks." Gucci Am., Inc. v. Tyrrell-

Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the

complaint fails to state a claim on which relief may be granted, the Court may not award

damages, "even if the post-default inquest submissions supply the missing information." Lopez,

2020 WL 915821, at *4 (internal quotation marks and citation omitted).

## 3. *Determining Damages*

Once liability has been established, the Court must "conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet,

Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (quoting Credit Lyonnais Sec. (USA) v.

Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "A plaintiff bears the burden of establishing [his]

entitlement to recovery and thus must substantiate [his] claim with evidence to prove the extent

of damages." Lopez, 2020 WL 915821, at *5 (internal quotation marks and citation omitted).

The evidence the plaintiff submits must be admissible. See Poulos v. City of N.Y., No. 14-CV-

3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL

3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F.

App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible

evidence"). If the documents the plaintiff has submitted provide a "sufficient basis from which to

evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary

hearing. Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.

1997) (noting that a court may determine appropriate damages based on affidavits and

documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages

specified in the default judgment") (internal quotation marks and citation omitted).

     The Court may credit a plaintiff's "recollections regarding their hours and pay in

conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-

5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018). But the Court "must

ensure that [Plaintiff's] approximations and estimates are reasonable and appropriate." Id.

Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in

amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); Joint Stock Co. Channel One

Russia Worldwide v. Infomir LLC, No. 16-CV-1318 (GBD) (BCM), 2018 WL 4760345, at *1

(S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

B. <u>Default Judgment</u>

In accordance with the two-step process in Rule 55, the Clerk of the Court entered Certificates of Default as to Defendants on December 12, 2023. <u>See</u> ECF Nos. 57-65. Despite being served with the amended complaint and despite being served with Plaintiff's default judgment motion, Defendants have failed to appear or otherwise challenge their default. ECF Nos. 25-33, 76. Defendants' failure to appear and respond to Plaintiff's default judgment motion, after having been properly served, gives rise to a fair inference that their default is willful. <u>See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct"). Second, delaying entry of a default judgment prejudices Plaintiff by delaying resolution of his claims and preventing him from recovering his unpaid wages. <u>See Inga v. Nesama Food Corp.</u>, No. 20-CV-909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), <u>adopted by</u>, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). Third, Defendants have failed to appear and participate in this action. They thus have presented no defense to Plaintiff's claims. Because the requirements of Rule 55 have been satisfied and the relevant factors weigh in favor of Plaintiff, I respectfully recommend that judgment against Defendants and in favor of Plaintiff be entered as set forth below.

1. *Liability*

a.  Jurisdiction and Venue

As a threshold matter, the Court has subject-matter jurisdiction over this action. Plaintiff sues under a federal statute—the FLSA—that gives rise to the Court's subject-matter jurisdiction. See 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over Plaintiff's "NYLL and WTPA claims because they arise out of the same facts and circumstances as the FLSA claims." Inga, 2021 WL 3624666, at *6.

The Court may also exercise personal jurisdiction, a "necessary prerequisite to entry of a default judgment[,]" over Defendants. Pinzon v. 467 Star Deli Inc., No. 22-CV-6864 (JGK) (SLC), 2023 WL 5337617, at *4 (S.D.N.Y. July 31, 2023), adopted by, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023). The Court has personal jurisdiction over the Corporate Defendants, because they are New York corporations that maintain their principal place of business at 87 Chrystie Street in Manhattan. ECF No. 23 at ¶¶ 9-44. Huynh, Shin, and Chong owned and operated the Corporate Defendants in this District. Id. at ¶¶ 45-59. Plaintiff also properly served each of them with the summons and amended complaint. ECF Nos. 25-33.

b.  Statute of Limitations

Under the NYLL, the statute of limitations is six years. See NYLL § 198(3). Under the FLSA, the statute of limitations is two years, or, if the violations were "willful[,]" three years. See 29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988). An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited . . . ." McLaughlin, 486 U.S. at 133. Although a plaintiff may not recover under both the FLSA and the NYLL for the same injury, courts allow

recovery under the statute that provides for the greatest relief. Ni v. Bat-Yam Food Servs. Inc.,
No. 13-CV-7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Nguyen worked at Defendants' restaurant from May 2022 through May 2023. ECF No.
23 at ¶ 7. Nguyen commenced this action on May 23, 2023. ECF No. 1. Thus, Nguyen's
employment period is entirely within NYLL's six-year statute of limitations, as well as both the
FLSA's three-year statute of limitations for willful violations and two-year statute of limitations
for non-willful violations. The Court therefore analyzes liability under both the FLSA and the
NYLL.

### c.  FLSA and NYLL Claims

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) "[ ]he was the
defendant's employee," (2) "[his] work involved interstate activity," and (3) "[ ]he worked for
hours for which [ ]he did not receive minimum and/or overtime wages." Tackie v. Keff Enters.
LLC, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014). A wage-and-
hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require
plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales." Id. at
*2 n.2. To recover overtime compensation, a plaintiff "must allege sufficient factual matter to
state a plausible claim that they worked compensable overtime in a workweek longer than 40
hours." Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). To
recover spread-of-hours pay, a plaintiff must also allege that he worked "more than ten hours per
day . . . and [was] not paid an additional hour at the minimum wage rate for days in which [he]
worked [ten] or more hours." Perez Garcia v. Hirakegoma Inc., No. 17-CV-7608 (SLC), 2020
WL 1130765, at *4 (S.D.N.Y. Mar. 9, 2020) (internal quotation marks and citation omitted).

d.  The Employment Relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). Courts afford the term employer "an expansive definition with 'striking breadth.'" Perez Garcia, 2020 WL 1130765, at *5 (quoting Mondragon v. Keff, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019)). Under the FLSA, "[a]n individual may simultaneously have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Plaintiff's employers for FLSA purposes, the Court must examine the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 104-05 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive." Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL § 190(3), "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Perez Garcia, 2020 WL 1130765, at *5 (internal quotation marks

and citations omitted). "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." Martin, 273 F. Supp. 3d at 422.

Plaintiff alleges that Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King Chong Food Market, Inc., Huynh, and Shin employed him at their restaurant as a waiter in a non-managerial capacity. ECF No. 23 at ¶¶ 6, 90-91. Plaintiff alleges that Huynh and Shin owned and operated Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., and King Chong Food Market, Inc. Id. at ¶¶ 46, 51. According to Plaintiff, Huynh and Shin possessed an ownership interest in the corporate entities and controlled their operations. Id. at ¶ 80. Plaintiff further alleges that Hyunh and Shin "determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees." Id. at ¶¶ 48, 53. Plaintiff alleges that Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King Chong Food Market, Inc., Huynh, and Shin "constitute a single employer of Plaintiff" (id. at ¶ 84), as each defendant possessed substantial control over his working conditions and compensation (id. at ¶ 82), the corporations all maintain their principal place of business at the same addresses (id. at ¶¶ 9, 15, 21), and Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King Chong Food Market, Inc., Huynh, and Shin failed to "adhere to corporate formalities necessary to operate the businesses as separate and legally distinct entities" (id. at ¶ 85). Collectively, these allegations plausibly allege that Plaintiff had an employee-employer relationship with Pho Vietnam 87 Corporation, Pho 87 Vietnamese Restaurant Inc., King Chong Food Market, Inc., Huynh, and Shin, who were joint employers within the meaning of the FLSA and NYLL. See Coley, 2016 WL 4179942, at *5-6 (holding multiple entities liable under FLSA and NYLL as employers where plaintiff alleged the

entities shared principal locations, employees worked on behalf of all companies, and the entities were organized to support the same enterprise); see also Galindo v. Yummy Foods Deli Corp., No. 21 Civ. 45 (JGLC) (SLC), 2024 WL 947283, at *8 (S.D.N.Y. Jan. 17, 2024) ("By their default, Defendants have admitted their status as Plaintiffs' employer."), adopted by, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024).

Plaintiff seeks to hold Defendants JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, and Hong liable under a theory of successor liability. See ECF No. 23 at ¶¶ 60-72. In April 2023, Defendants JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, and Chong purchased the restaurant where Plaintiff worked. Id. at ¶ 60.

Federal courts sitting in New York employ either a New York common law standard or a "substantial continuity" test in determining whether a defendant may be held liable for a previous employer's labor law violations. Xue Ming Wang v. Abumi Sushi, Inc., 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017). Under the common law test, which applies for NYLL claims, see Duchitanga v. 43 Ave Top N' Quality Corp., No. 17-CV-1145 (LDH) (RLM), 2021 WL 7906539, at *9 (E.D.N.Y. Sept. 13, 2021), a business buyer is liable for the seller's debts only when "(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions [are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller; [or] (4) a buyer . . . is a mere continuation of a seller." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003).

The more liberal "substantial continuity" test, which applies to FLSA claims, see Duchitanga, 2021 WL 7906539, at *8-9,[1] "involves consideration of at least three factors: (1)

---

[1] "The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context," but "[s]everal district courts in this Circuit have held that it applies to FLSA claims." Pena v. Metro. Wireless Anandpur Inc., No. 21-CV-2239 (LJL), 2021 WL 5054368, at *5 (S.D.N.Y. Nov. 1, 2021) (quoting Feng Chen v. Patel, No. 16-CV-1130 (AT) (SDA), 2019 WL 2763836, at *4 (S.D.N.Y. July 2, 2019)).

whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; and (3) whether there has been a substantial continuity of business operations." Guangcheng Chen v. Matsu Fusion Rest. Inc., No. 19-CV-11895 (JMF), 2020 WL 6135764, at *4 (S.D.N.Y. Oct. 16, 2020) (citing Abumi Sushi, 262 F. Supp. 3d at 89-90). Courts may also consider the following additional factors, which are given less weight than the first two "more significant" factors:

> (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [it] uses the same machinery, equipment, and methods of production; and (9) whether [it] produces the same product.

Diaz v. Slayton One Cleaner Inc., No. 17-CV-1311 (LTS) (KNF), 2018 WL 4935831, at *4 (S.D.N.Y. Oct. 11, 2018) (quoting Bautista v. Beyond Thai Kitchen, Inc., No. 14-CV-4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)). Under either test, the party asserting successor liability has the burden of proof. Diaz, 2018 WL 4935831, at *4 (citing Abumi Sushi, 262 F. Supp. 3d at 92).

In support of the successor liability theory, Plaintiff alleges that "there were multiple red flags surrounding the sale of the restaurant located at 87 Chrystie St[reet]," such that "a cursory review of the [previous owners'] payroll and timekeeping practices at the time of the sale would have alerted the [new owners] that the [previous owners] violated the FLSA and NYLL." Id. at ¶¶ 63-64. Further, the new owners "still operate the restaurant in the same location"; the new owners "employ many of the same employees"; the employees "work under substantially the same working conditions that existed when the [previous owners] owned and operated the restaurant"; the new owners use "the same fixtures, machinery, and equipment" as the previous

owners; and the new owners own and operate the restaurant in "substantially the same manner." Id. at ¶¶ 65-72.

Starting with the common law test for Plaintiff's NYLL claims, these allegations establish successor liability, because Plaintiff has adequately alleged that the business under its new ownership is a "mere continuation" of the business by the previous owners. See Payamps v. M & M Convenience Deli & Grocery Corp., No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *10-11 (E.D.N.Y. Dec. 9, 2019) (recommending grant of default judgment under theory of successor liability because plaintiff established that the business was a "mere continuation" where the business "retain[ed] the same location and s[old] the same goods"); see also Cargo Partner AG, 352 F.3d at 45. Therefore, I recommend that the new owners be held jointly liable for the NYLL claims under a theory of successor liability.

Further, Plaintiff's allegations weigh in favor of finding successor liability under the "substantial continuity" test for his FLSA claims, because, with regards to "the first (and critical factor)," the successor had notice of potential liability. As Plaintiff alleged, a cursory review of the payroll would have alerted the new owners of liability under the FLSA and NYLL. ECF No. 23 at ¶¶ 63-64. Indeed, Plaintiff alleges that he was paid a daily rate of $85 for 12 hours of work a day, which is plainly well below the state minimum wage rate at the time. See Id. at ¶ 93; ECF No. 72 at ¶¶ 4-5. Plaintiff was also not paid any overtime, despite working in excess of 40 hours a week. See ECF No. 23 at ¶¶ 92-93; ECF No. 72 at ¶¶ 4-5. Plaintiff further alleges that the new owners continued the unlawful pay practice of the prior owners, after the new owners purchased the restaurant. Id. at ¶¶ 60 (indicating that the sale of the restaurant occurred in April 2023); 92-93 (alleging that Plaintiff worked at the restaurant through May 2023, and for the duration of his employment, including after the restaurant's sale, he was paid $85 per day). See Duchitinga,

2021 WL 7906539, at *10 (finding successor liability under the substantial continuity test because purchaser had notice of "its predecessor's violations" where plaintiff alleged defendant "continued [the] unlawful payroll practices"). While Plaintiff does not allege that the predecessor Defendants are unable to satisfy a judgment, Plaintiff alleges that the new owners use the same location, machinery, equipment; employ the same employees; and operate the same business as the previous owners. ECF No. 23 at ¶¶ 65-72. These allegations are sufficient to establish successor liability under the substantial continuity test. Duchitinga, 2021 WL 7906539 at *11 (holding that even where the second factor, i.e., the predecessor's ability to provide relief, was not met, allegations that acquired business "remained at the same location . . . ; operated under the same name . . . ; used the same dry-cleaning equipment; employed much of the same workforce . . . ; and continued to offer the same dry-cleaning services" were sufficient to establish successor liability); see also Pareja v. 184 Food Corp, No. 18-CV-5887 (JPO) (SDA), 2021 WL 3109621, at *9 (S.D.N.Y. July 22, 2021) (finding that Plaintiff established successor liability under the FLSA at default judgment stage against appearing defendants), adopted by, 2021 WL 3501229 (S.D.N.Y. Aug. 9, 2021). Therefore, I recommend that Defendants JBC 87 LLC, JBC 3810 LLC, JBC 2238 LLC, and Chong be held liable as well for the violations of the NYLL and FLSA under a theory of successor liability. All Defendants are thus jointly and severally liable under the FLSA and NYLL for any damages award to Plaintiff. See Pinzon, 2023 WL 5337617, at *7 (imposing joint and several liability on defaulting defendants because, "by their default, [they] have admitted their status as . . . employers"; Pineda v. Masonry Constr., Inc., 831 F. Supp. 2d 666, 685–86 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where individual defendant "was an owner,

partner, or manager," and his default established defendants as employers under the FLSA and NYLL).

        e.   Interstate Commerce

Under the FLSA, Plaintiff must establish that he or his employers were engaged in interstate commerce. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (stating that employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which he is employed"); see also 29 U.S.C. § 203(s)(1) (defining "[e]nterprise engaged in commerce").

The restaurant is located in Manhattan (ECF No. 23 at ¶ 6), and "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (internal quotation marks omitted) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). Further, Plaintiff has alleged that, while he was employed at Defendants' restaurant, the restaurant had a gross annual volume of sales exceeding $500,000. ECF No. 23 at ¶¶ 10, 16, 22, 28, 34, 40. "[I]t is reasonable to infer that the myriad goods necessary to operate a [ ] restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State." Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). Accordingly, Plaintiff's allegations satisfy the interstate commerce element for FLSA liability. See Suriel v. Cruz, No.

20-CV-8442 (VSB) (SLC), 2022 WL 1750232, at *11 (S.D.N.Y. Jan. 10, 2022), adopted by,

2022 WL 1751163 (S.D.N.Y. May 31, 2022).

      f.   Unpaid Minimum Wage and Overtime Wages

      The applicable minimum wage under the NYLL from May 1, 2022 to May 31, 2023 was

$15 per hour. NYLL § 652. Plaintiff alleges that he was paid a flat daily rate of $85 per day, and

he worked 12 hours per day six days per week. ECF No. 23 at ¶¶ 92-93.  To determine the

regular rate of pay for restaurant employees, the court must divide the employee's total weekly

earnings by the lesser of 40 hours or the actual number of hours worked by that employee during

the work week. Anzurez v. La Unica Caridad Inc., No. 20-CV-3828 (JMF) (GWG), 2021 WL

2909521, at *3 (S.D.N.Y. July 12, 2021), adopted by, 2021 WL 3173734 (S.D.N.Y. July 27,

2021); see also Holguin v. Quality Furniture NY LLC, No. 23-CV-0004 (AT) (RFT), 2024 WL

4954048, at *8 (S.D.N.Y. Nov. 8, 2024), adopted by, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025)

(calculating regular rate of pay by taking plaintiff's daily rate multiplied by days worked per

week, and dividing the resultant weekly rate by "the first 40 hours per week"). Taking Plaintiff's

allegations as true, he was paid a regular hourly rate below the minimum wage required by New

York law. Plaintiff was paid a salary of $510 per week, making his regular hourly rate

$12.75.[2] Thus, Plaintiff's regular hourly rate was below the applicable minimum wage.

      Further, both the FLSA and the NYLL require an employer to pay an overtime rate of

one-and-one-half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); 12

N.Y.C.R.R. § 142-2.2. To state an overtime claim, a plaintiff "must allege only that she worked

---

     [2] This number was determined by dividing Plaintiff's weekly salary of $510 by 40 hours
per week.

compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime." Tackie, 2014 WL 4626229, at *3.

Plaintiff alleges that he regularly worked more than 40 hours per week and that Defendants failed to pay him an overtime hourly rate for hours in excess of 40 hours per week. ECF No. 23 at ¶¶ 4-5, 8, 92-93. These allegations establish Defendants' liability for unpaid overtime wages. See Galindo, 2024 WL 947283, at *10 (holding that plaintiff stated claim for overtime wages); Suriel, 2022 WL 1750232, at *13 (same); Agureyev v. H.K. Second Ave. Rest., Inc., No. 17-CV-7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (same).

g.  Spread-of-Hours Pay

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours. 12 N.Y.C.R.R. § 142-2.4(a). Spread-of-hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 142-2.18. "[T]he spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" Perez Garcia, 2020 WL 1130765, at *5 (quoting Andrade v. 168 First Ave. Rest. Ltd., No. 14-CV-8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016)), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). "Employees may recover spread-of-hours wages in addition to federal and state overtime wages." Ortega, 2024 WL 4751732, at *7 (citing Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339-41 (S.D.N.Y. 2005)).

Plaintiff alleges that he regularly worked shifts longer than ten hours, but that Defendants did not pay spread-of-hours wages. ECF No. 23 at ¶¶ 92, 132-35; see also ECF No. 72 at ¶ 18. Accordingly, Plaintiff has adequately stated a spread-of-hours claim and, under New York law,

Defendants are liable for the spread-of-hours wages they failed to pay Plaintiff. See Galindo, 2024 WL 947283, at *11 (finding defendants liable for spread-of-hours wages); Agureyev, 2021 WL 847977, at *7-8 (same).

      h.  Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an additional equal amount as liquidated damages." Lopez, 2020 WL 915821, at *10 (internal quotation marks and citation omitted); see also 29 U.S.C. § 216(b). "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages. Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260). This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." Lopez, 2020 WL 915821, at *10.

The NYLL also authorizes liquidated damages. See Lopez, 2020 WL 915821, at *10. An employee is "entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" Id. (quoting NYLL § 198(1-a)). "Courts deem defendants' actions willful where they have defaulted, . . . and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'" Lopez, 2020 WL 915821, at *10 (quoting Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept.

8, 2016), adopted by, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016)). Liquidated damages under the NYLL is 100% of the amount of unpaid wages. NYLL §§ 198(1-a), 663(1).

A plaintiff cannot recover liquidated damages under both the FLSA and the NYLL. See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60-61 (2d Cir. 2016) (summary order). A plaintiff recovers "under the statute that provides the greatest relief." Castillo v. RV Transp., Inc., No. 15-CV-527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). The NYLL allows for pre-judgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not. See Agureyev, 2021 WL 847977, at *8. Accordingly, because the NYLL "provides greater relief to [Plaintiff] . . . the Court will apply its liquidated damages provisions." Id. (citing Perez Garcia, 2020 WL 1130765, at *9).

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see Galindo, 2024 WL 947283, at *12, and therefore, Plaintiff is entitled to liquidated damages equal to 100% of his unpaid wages. See id. (awarding liquidated damages of 100% of unpaid wages where defendants defaulted); Victor v. Sam's Deli Grocery Corp., No. 19-CV-2965 (SLC), 2022 WL 3656312, at *12 (S.D.N.Y. Aug. 25, 2022) (same); Agureyev, 2021 WL 847977, at *8 (same).

i.    WTPA Claims

Plaintiff alleges that Defendants failed to provide him wage statements or a wage notice. ECF No. 23 at ¶¶ 138, 141. Under the WTPA, "employers are required to provide employees with a notice containing the rate and frequency of their pay at the time of hiring, NYLL § 195(1), and to furnish them with a written statement with each payment of wages, listing the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked, NYLL § 195(3)." Juarez v. Manhattan Laundry Ctrs. Inc., No. 18-CV-2843 (VSB),

2023 WL 3614264, at *4 (S.D.N.Y. May 24, 2023). For Plaintiff to have standing to assert a

claim under the WTPA, he must adequately allege:

> (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection
> between the injury and the conduct complained of such that the injury is "fairly traceable
> to the challenged action of the defendant;" and (3) it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision from the Court.

Franklin v. Whole Foods Mkt. Grp., Inc., No. 20-CV-4935 (VEC), 2022 WL 256460, at *8

(S.D.N.Y. Jan. 26, 2022) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992));

see Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302-03 (2d Cir. Aug. 30, 2024) (holding

that plaintiff asserting claims under NYLL § 195 must demonstrate standing).

For an "informational injury," such as the failure to receive required information, to give

rise to standing, see TransUnion v. Ramirez, 594 U.S. 413, 441 (2021), a plaintiff must allege

"'downstream consequences' from failing to receive that information that show an interest in

using the information 'beyond bringing the lawsuit.'" Shi v. TL & CG Inc., No. 19-CV-8502

(SN), 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022) (quoting Harty v. W. Point Realty, Inc.,

28 F.4th 435, 444 (2d Cir. 2022)). In TransUnion, the Supreme Court emphasized that "bare

procedural violation[s], divorced from any concrete harm[,]" are insufficient to establish Article

III standing. 594 U.S. at 440 (internal quotation marks and citation omitted). Instead, a plaintiff

seeking relief in federal court must demonstrate that any such procedural violation resulted either

in a tangible harm or an intangible harm "traditionally recognized as providing a basis for a

lawsuit in American courts." TransUnion, 594 U.S. at 440.

Post TransUnion, the Second Circuit explained that a plaintiff asserting § 195 claims

"cannot rely on 'technical violations' of the [NYLL] but must allege 'actual injuries suffered as a

result of the alleged . . . wage notice and wage statement violations.'" Guthrie, 113 F.4th at 305.

Specifically, "a plaintiff must show some causal connection between the lack of accurate notices

and the downstream harm." Id. at 308. A plaintiff must provide allegations to "support a plausible theory as to how he was injured by [the] defendants' failure to provide the required documents." Id. at 309 (internal quotation marks and citation omitted). While a plaintiff need not "demonstrate that their lack of notice resulted in an injury greater than [their employers'] minimum wage, overtime, and spread-of-hours wage violations[,]" to establish Article III standing, the plaintiff must "plausibly show[ ] that defective notices led him or her to lose wages[,]" which would constitute "a concrete interest and [ ] not simply policing legal infractions in the abstract." Id. at 309-10 (internal quotation marks and citation omitted). Consequently, merely alleging that an employer failed to provide the required wage notice and wage statement is insufficient to "identify a concrete downstream harm" suffered by the plaintiff "as a result of the statutory violation[,]" and thus does not adequately plead a claim under § 195. Id. at 310 ("Without plausible allegations that he suffered a concrete injury because of [his employer's] failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.").

Here, Plaintiff merely alleges that Defendants did not provide the required notices. See ECF No. 23 at ¶¶ 138, 141; see also ECF No. 72 at ¶¶ 17, 20-23. Plaintiff does not allege that he would have taken any action or done anything differently had he received the required notice. Nor does Plaintiff allege that if he would have received the notices, he would have understood that he was being underpaid and would have sought to receive his overtime wages or the minimum wage. In Plaintiff's memorandum in support of his motion for default judgment, he argues that he is nonetheless entitled to recover under the WTPA. ECF No. 73 at 23. But Plaintiff cites only to case law preceding Guthrie for support. ECF No. 71 at 21-24. In short, Plaintiff has not alleged sufficient facts to plausibly establish a concrete harm from the denial of the wage

notices and wage statements, and thus Plaintiff does not have standing to assert his WTPA claims.

j. Tips

Plaintiff claims that Defendants unlawfully appropriated his tipped wages. ECF No. 23 at ¶¶ 9-17, 96-99. "Under both the FLSA and the NYLL, an employer may pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage, and this allowance against the minimum cash wage is known as a tip credit." Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 234–35 (S.D.N.Y. 2020), adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc., No. 16-CV-8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021) (cleaned up) (internal quotation marks and citations omitted). "An employer may not take a tip credit unless (1) 'such employee has been informed by the employer of the [tip credit] provision[ ]'; and (2) 'all tips received by such employee have been retained by the employee.'" Id. (quoting 29 U.S.C. § 203(m)(2)(A)(ii)). This tip credit provision is "strictly construed." Hernandez v. JRPAC Inc., No. 14-CV-4176 (PAE), 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016). Under both the FLSA and the NYLL, the burden is on the employers to show that they have complied with the tip credit requirements. Villanueva, 500 F. Supp. at 234.

Under the NYLL, notice of the tip credit must be in writing. 12 N.Y.C.R.R. § 146-2.2(a). Moreover, once an employer has provided written notice of this tip credit, the employer must obtain "acknowledgement of receipt signed by the employee," and that signed acknowledgement must "be kept on file for six years." Id. "Courts in and outside of this District 'have interpreted the notice provision to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.'" Hernandez, 2016 WL

3248493, at *23 (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011)).

Plaintiff has averred that Defendants did not provide employees of the restaurant the requisite notice that tips would be counted against their minimum wage. ECF No. 23 at ¶¶ 97-102; see also ECF No. 72 at ¶¶ 9-17. Plaintiff also has asserted that he did not receive all tips due to him, which he estimated were around $250 per week. ECF No. 23 at ¶¶ 97-102; ECF No. 72 at ¶¶ 11-12. Accordingly, I recommend that the Court not apply a tip credit in determining the minimum wages due Plaintiff. See Villanueva, 500 F. Supp. 3d at 234-35 (holding that defendants were not entitled to a tip credit where plaintiffs averred that defendants did not provide notice that tips would be counted against the minimum hourly wage and plaintiffs did not receive all tips due to them); Najera v. Lake Ave Pizza LLC, No. 21-CV-6753 (LGS) (SLC), 2023 WL 5752588, at *7 (S.D.N.Y. Aug. 3, 2023) (finding defendants ineligible for tip credit where plaintiff "allege[d], and Defendants . . . admitted by their default, that they never notified him that tips would be included as an offset to his wages"), adopted by, 2023 WL 5748117 (S.D.N.Y. Sept. 6, 2023); Chen v. Shanghai Café Deluxe, No. 16-CV-4790 (VF), 2023 WL 2401376, at *6 (S.D.N.Y. Mar. 8, 2023) ("Because Defendants failed to meet the notice requirements in the FLSA and the NYLL, they are not entitled to any tip credit against the minimum wage.").

Plaintiff also seeks to recover his unpaid tips. ECF No. 71 at 19-20; ECF No. 23 at ¶¶ 143-48; ECF No. 72 at ¶ 11. Plaintiff brings a claim under the NYLL for unlawful retention of his tips. ECF No. 23 at ¶¶ 143-48. Section 196-d of the NYLL prohibits an employer from demanding or accepting any part of the gratuities received by an employee. NYLL § 196-d. Insofar as Plaintiff has alleged that Defendants required him to pool his tips under a mandatory

tip-pooling scheme (ECF No. 23 at ¶ 97; ECF No. 72 at ¶¶ 10-11) and then withheld all or nearly

all of the tips (ECF No. 23 at ¶ 98; ECF No. 72 at ¶¶ 11-14), Plaintiff has established liability

under section 196-d. See Kuan v. Notoriety Grp. LLC, No. 22-CV-1583 (JLR) (KHP), 2023 WL

3937317, at *8 (S.D.N.Y. May 22, 2023) (holding that plaintiff was entitled to withheld tips

where plaintiff alleged defendants "required her to submit her tips for a purported pool

arrangement and then never paid her back *any* amount from the tip pool") (emphasis in

original), adopted by, 2023 WL 3936749 (S.D.N.Y. June 9, 2023). Therefore, Plaintiff is entitled

to tips withheld during his employment at Defendants' restaurant, in addition to his unpaid

minimum and overtime wages. See Fermin, 93 F. Supp. 3d at 53 (awarding minimum wage

and withheld tips); Kuan, 2023 WL 3937317, at *8.

    2. *Damages*

    The Court must determine whether Plaintiff has provided sufficient evidence to support

his claimed damages. See Transatlantic Marine, 109 F.3d at 111; Victor, 2022 WL 3656312, at

*4. In support of his motion for default judgment, Plaintiff includes his declaration attesting to

the dates and circumstances of his employment at Defendants' restaurant, as well as a

spreadsheet detailing his damages computation. ECF Nos. 72, 73-1. Defendants have not

responded to Plaintiff's motion for default judgment. Plaintiff has met his evidentiary burden of

proving damages and an in-person hearing is unnecessary because Plaintiff's submissions

constitute a sufficient basis from which to evaluate the fairness of Plaintiff's damages

request. See, e.g., Fustok, 873 F.2d at 40; Victor, 2022 WL 3656312, at *12; Ortega, 2024 WL

4751732, at *10.

### a. Unpaid Minimum Wage

Plaintiff was paid $85 per day for a total of $510 per week. ECF No. 72 at ¶¶ 4-5; ECF No. 73-1. This produced a minimum wage rate of $12.75 per hour. The minimum wage rate during Plaintiff's period of employment at Defendants' restaurant was $15 per hour. NYLL § 652(1). Plaintiff worked at Defendants' restaurant from approximately May 2022 through May 2023, for a total of approximately 50 weeks.[3] See ECF No. 72 at ¶ 5. Plaintiff therefore made $25,500 for his 50 weeks of employment at Defendants' restaurant.[4] If Plaintiff had been paid at the New York minimum wage rate, however, Plaintiff would have earned $30,000.[5] I therefore recommend that Plaintiff be awarded $4,500 in unpaid minimum wages.

### b. Unpaid Overtime Wages

The Court calculates the appropriate overtime wages "by multiplying Plaintiff's regular hourly rate (or the minimum wage rate, if their regularly hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours [he] worked each week." Lopez v. MNAF Pizzeria, Inc., No. 18-CV-6033 (ALC), 2023 WL 6795811, at *4 (S.D.N.Y. Oct. 13, 2023). Here, Plaintiff's regular hourly rate was

---

[3] Because Plaintiff does not allege the specific dates of his employment, the Court calculated the length of Plaintiff's employment from the last full week in May 2022 through the first full week in May 2023 (Sunday, May 22, 2022, through Saturday, May 6, 2023). See Duran v. M.S.T.A.S. LTD., No. 20-CV-9228 (GHW) (VF), 2023 WL 7304817, at *6 (S.D.N.Y. Sept. 20, 2023) (using "dates most favorable to Defendants" in damages calculation where plaintiff did "not provide[ ] a specific date for the start of her employment"), adopted by, 2023 WL 7126296 (S.D.N.Y. Oct. 30, 2023).

[4] This was determined by taking Plaintiff's weekly salary of $510 and multiplying it by the 50 weeks he worked at the restaurant.

[5] This was determined by multiplying the minimum hourly rate of $15 by 40 hours per week, resulting in a weekly salary of $600. The weekly salary was then multiplied by the 50 weeks Plaintiff worked at the restaurant.

below the minimum wage, so the Court uses the applicable minimum wage rate to calculate

Plaintiff's overtime hourly rate. Minimum wage under the NYLL at all relevant times during

Plaintiff's employment was $15 per hour. See NYLL § 652(1). Consequently, Plaintiff's

overtime rate was $22.50 per hour.

Plaintiff alleges that he worked 12 hours a day six days a week, for a total of 72 hours per

week.[6] ECF No. 72 at ¶ 4. Plaintiff is thus entitled to overtime pay for 32 hours per week. At an

overtime rate of $22.50 per hour, Plaintiff should have been paid $720 per week in overtime

wages. Plaintiff worked at Defendants restaurant from May 22, 2022, through May 6, 2023, for a

total of 50 weeks. Id. at ¶ 5. I therefore recommend that Plaintiff be awarded $36,000 in overtime

wages.[7]

    c. Tips

Plaintiff is entitled under NYLL § 196-d to reimbursement for unlawful deductions to his

tips in the amount of $12,500, which is calculated by multiplying the total tips Plaintiff should

have received each week ($250) (see ECF No. 72 at ¶ 12) by the number of weeks he was

employed at the restaurant (50) (see id. at ¶ 4). See, e.g., Gunawan v. Sake Sushi Rest., 897 F.

Supp. 2d 76, 90 (E.D.N.Y. 2012) (awarding plaintiff withheld tips in the amount equal to tips

---

[6] In support of his motion for default judgment, Plaintiff provided a table computing his requested damages. ECF No. 73-1. In the calculation, Plaintiff identifies the average hours he worked per week as 77 hours. In his declaration, however, Plaintiff attests that he worked 72 hours per week. ECF No. 72 at ¶ 4. The Court therefore uses the number of hours asserted in Plaintiff's declaration (72) to determine unpaid overtime wages. Id.

[7] This is calculated by multiplying Plaintiff's overtime hourly rate ($22.50) by 32 hours per week, resulting in $720 per week in overtime wages. The weekly overtime wages ($720) is then multiplied by 50 weeks.

plaintiff should have received each week multiplied by the number of weeks worked and accounting for tips defendants did not withhold).

    d.   Spread-of-Hours Pay

Spread-of-hours damages are calculated by multiplying the number of days an employee worked more than ten hours by the minimum wage rate. 12 N.Y.C.R.R. § 142-2.4(a); see Galindo, 2024 WL 947283, at *14. Plaintiff worked six days per week for 12 hours a day. ECF No. 72 at ¶ 4. Plaintiff was employed at Defendants' restaurant for approximately 50 weeks. See ECF No. 72 at ¶ 5. Accordingly, Plaintiff should be awarded spread-of-hours pay in the amount of $4,500.[8] Ortega, 2024 WL 4751732, at *10 (calculating spread-of-hours damages by multiplying spread-of-hours days per week by number of weeks worked and the applicable minimum wage rate).

    e.   Liquidated Damages

Under the NYLL, an employer is liable for liquidated damages equal to the full amount of Plaintiff's unpaid wages, unless the employer can demonstrate that it acted in "good faith." NYLL § 198(1-a). Because a showing of good faith is an affirmative defense under the NYLL, a defaulting defendant cannot carry that burden. See Tackie, 2014 WL 4626229, at *4-5; Jaramillo v. Banana King Rest. Corp., No. 12-CV-4695 (NGG) (RML), 2014 WL 2993450, at *5 (E.D.N.Y. July 2, 2014).

"The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages, which includes unpaid minimum wages, unpaid overtime, and unpaid spread-of-hours." Villanueva, 500 F. Supp. 3d at 239. Therefore, Plaintiff is entitled to 100% of his

---

[8] This is calculated by taking the minimum hourly wage ($15) and multiplying it by the number of days each week that Plaintiff worked more than ten hours a day (6). The resulting number ($90) is then multiplied by 50 weeks.

unpaid wages, including spread-of-hours pay, as liquidated damages. Plaintiff's unpaid

minimum, overtime, tips, and spread-of-hours wages equals $57,500. As such, I recommend that

Plaintiff be awarded $57,500 in liquidated damages.

        f.   Pre-Judgment Interest

Plaintiff requests pre-judgment interest on his compensatory damages. ECF No. 23 at

¶¶ 121, 131, 135; see ECF No. 71 at 24. Although pre-judgment interest is not awarded where

FLSA liquidated damages are awarded, "prejudgment interest is still appropriate where a

plaintiff is awarded liquidated damages under the NYLL." Morales v. Mw Bronx, Inc., No. 15-

CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016); see also Newman v. ASA

Coll., Inc., -- F. Supp. 3d --, 2024 WL 4579478, at *13-14 (S.D.N.Y. Oct. 24, 2024) (adopting

recommendation awarding both liquidated damages and prejudgment interest on NYLL claims).

"Prejudgment interest applies only to the amount of compensatory damages and excludes the

amount of liquidated damages." MNAF, 2023 WL 6795811, at *3 (quoting Maldonado v. La

Nueva Rampa, Inc., No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May

14, 2024)).

Under New York law, pre-judgment interest is awarded at the rate of nine percent per

year. N.Y. C.P.L.R. § 5004. "Simple prejudgment interest is calculated from a singular, midpoint

date . . . [and] by multiplying the principal by the interest rate by the time period—from a

singular, midpoint date—up until and including the date judgment is entered." MNAF, 2023 WL

6795811, at *5 (internal quotation marks and citation omitted). The midpoint of a plaintiff's

employment is often used as the date from which to calculate pre-judgment interest in wage-and-

hour cases. Id.

Defendants employed Plaintiff from May 22, 2022, through May 6, 2023. ECF No. 72 at ¶ 5. The midpoint between those dates is November 12, 2022. Accordingly, I recommend awarding pre-judgment interest at nine percent per year calculated from November 12, 2022, through the date of judgment on the amount of unpaid minimum, overtime, tip, and spread-of-hours wages ($57,500). The amount of pre-judgment interest through the date of this report and recommendation is $11,498.42.[9]

g.    Attorney's Fees

The FLSA and NYLL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one. 29 U.S.C. § 216(b); NYLL § 198(1-a); Callari v. Blackman Plumbing Supply, Inc., No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."). "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." Tackie, 2014 WL 4626229, at *6. An award of attorney's fees should be based on the court's determination of a "presumptively reasonable fee." Sandoval v. Materia Bros. Inc., No. 11-CV-4250 (CS) (GAY), 2013 WL 1767748, at *3 (S.D.N.Y. Mar. 5, 2013) (quoting Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008)). This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case." Id. The party

---

[9] This is calculated by multiplying Plaintiff's principal compensatory damages award ($57,500) by the interest rate (9%). That figure is then divided by 365 to determine the daily interest, which is multiplied by the number of days between the midpoint date, November 12, 2022, and the date of this report and recommendation, January 31, 2025 (811 days).

seeking attorney's fees "should submit evidence supporting the hours worked and rates claimed," such as "contemporaneous record[s] of time." <u>Newman</u>, 2024 WL 4579478, at *15 (internal quotation marks and citations omitted).

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." <u>Farbotko v. Clinton County</u>, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Reiter v. MTA New York City Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).

Here, the Southern District of New York is the relevant community. The range of hourly fees for straightforward wage-and-hour cases that result in a default judgment is $250 to $450. <u>See, e.g.</u>, <u>Ke v. J R Sushi 2 Inc.</u>, No. 19-CV-7332 (PAE) (BCM), 2024 WL 1891195, at *3 (S.D.N.Y. Apr. 30, 2024) (explaining that reasonable fee range in wage-and-hour cases is $250 to $450 per hour); <u>Ortega</u>, 2024 WL 4751732, at *12 ("In this district, courts generally award experienced wage-and-hour attorneys between $300.00 and $400.00 per hour."); <u>Pinheiro v. Interior Mogul LLC</u>, No. 22-CV-9856 (JHR) (RWL), 2024 WL 4716346, at *10 (S.D.N.Y. Aug. 28, 2024) (finding that $400 per hour was reasonable rate for attorney with thirteen years of experience).

Plaintiff requests fees for two attorneys, but only submits time records for one. <u>See</u> ECF No. 73-2. For alleged work performed by Joshua D. Levin-Epstein, Plaintiff requests an hourly rate of $450. ECF No. 73 at ¶ 6. But Plaintiff did not provide contemporaneous time records for

Mr. Levin-Epstein's work on this case. See Newman, 2024 WL 4579478, at *15 (explaining that billing records, or evidence that otherwise reflects hours worked, must be submitted in support of a request for attorney's fees). Therefore, I recommend not awarding any fees for work by Mr. Levin-Epstein, given the lack of contemporaneous billing records. See e.g., Duran, 2023 WL 7304817, at *9 (finding that there was no basis for an award of attorney's fees where plaintiff failed to provide contemporaneous time records for counsel); Leo v. Province Therapeutics, LLC, No. 23-CV-05418 (NJC) (JMW), 2024 WL 2923945, at *7 (E.D.N.Y. May 21, 2024) ("courts within this Circuit have denied requests for attorney's fees when counsel fails to submit contemporaneous billing records").

Plaintiff requests an hourly rate of $350 for the services of Eunon Jason Mizrahi, who has practiced law since 2016. ECF No. 73 at ¶ 9. Mr. Mizrahi has practice in the area of employment law since graduating from law school. Id. A court in this district recently reduced Mr. Mizrahi's hourly rate to $250 per hour, because Mr. Mizrahi's requested rate of $350 was "at the high end of what courts generally award senior associates in FLSA and NYLL cases." Holguin, 2024 WL 4954048, at *17; see also Proano v. Melrose Home Improvement Corp., No. 22-CV-6050 (KAM) (JAM), 2023 WL 8003303, at *12 (E.D.N.Y. Nov. 17, 2023) (reducing Mr. Mizrahi's rate from $350 per hour to $250 per hour). Moreover, nothing about this case warrants an hourly rate above the hourly rate recently awarded to Mr. Mizrahi. This is a straightforward wage-and-hour case where the Defendants never appeared. I therefore recommend that Mr. Mizrahi's rate be reduced to $250 per hour.

Turning to the hours requested, "the relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96,

99 (2d Cir. 1992); <u>Mugavero v. Arms Acres, Inc.</u>, No. 03-CV-5724 (PGG), 2010 WL 451045, at

*6 (S.D.N.Y. Feb. 9, 2010) (same). A court should exclude from the lodestar calculation

"excessive, redundant or otherwise unnecessary hours." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d

422, 425 (2d Cir. 1999); <u>see also</u> <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 116 (2d Cir. 1997) ("If

the district court concludes that any expenditure of time was unreasonable, it should exclude

these hours from the lodestar calculation.").

      Plaintiff provided time records for Mr. Mizrahi's work, which include the hours

expended, dates of work, and a brief description of the tasks that Mr. Mizrahi performed on this

case. <u>See</u> ECF No. 73-2. Based on the time records, Mr. Mizrahi performed 39.1 hours of work,

which included drafting summonses and the complaint, communicating with the client, and

drafting the memorandum in support of the motion for default judgment. <u>Id.</u> A review of the

tasks performed demonstrates that the time allocated to each task was reasonable. Moreover, the

39.1 hours of work by Mr. Mizrahi falls well within the typical range of hours approved by

courts for work on a case that results in a default judgment. <u>See, e.g.</u>, <u>Holguin</u>, 2024 WL

4954048, at *17 (finding 36.2 hours reasonable "for work on a default judgment"); <u>Rodriguez v.

Heinchon Marcus Distributors, LLC</u>, No. 16-CV-1447 (VB) (PED), 2016 WL 7489067, at *9

(S.D.N.Y. Nov. 10, 2016) (finding 39.4 hours was reasonable in NYLL and FLSA default

judgment case because it was "well within [the] 55 hour cap that other courts in this District have

used for wage-and-hour cases in the same procedural posture"), <u>adopted by</u>, 2016 WL 7477559

(S.D.N.Y. Dec. 28, 2016); <u>Rodriguez v. Solares Corp.</u>, No. 16-CV-3922 (CBA) (SMG), 2018

WL 7252949, at *11 (E.D.N.Y. Aug. 14, 2018) (finding 39.6 hours reasonable in NYLL and

FLSA default judgment case because it fell "well below the high end claimed"), <u>adopted by</u>,

2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

I therefore recommend that Plaintiff be awarded $9,775 in attorney's fees for the 39.1 hours of work by Mr. Mizrahi, at a reduced hourly rate of $250.

h.  Costs

Plaintiff requests an award of $1,663.30 in filing fees and costs for effecting service of process ($402 for the filing fee; $183.20 for service on June 27, 2023; $179.45 for service on September 16, 2023; and $898.65 for service on November 9, 2023). ECF No. 71 at 26; ECF No. 73-3. Plaintiff submitted receipts substantiating the fees sought. ECF No. 73-3. An employee who prevails in a wage-and-hour action is entitled to recover costs. See 29 U.S.C. § 216(b); NYLL § 663(1). Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted). Compensable costs include filing fees and the costs for effecting service of process. See Newman, 2024 WL 4579478, at *16 (awarding costs for "court filing fee, service on Defendants, and the transcript of the order to show cause hearing"); see also Siegel v. Bloomberg L.P., No. 13-CV-1351 (DF), 2016 WL 1211849, at *15 (S.D.N.Y. Mar. 22, 2016) (awarding costs of filing fees and service of process). Accordingly, I recommend that the Court award Plaintiff costs in the amount of $1,663.30.

## CONCLUSION

In sum, I respectfully recommend that Plaintiff's motion for default judgment be granted for all claims except his WTPA claim. Further, I respectfully recommend that upon entry of default judgment, Plaintiff be awarded: $4,500 in unpaid minimum wage; $36,000 in unpaid overtime; $12,500 in unpaid tips; $4,500 in spread-of-hours wages; $57,500 in liquidated damages; $9,775 in attorney's fees; and $1,663.30 in costs. Additionally, I recommend that pre-judgment interest in the amount of $11,498.42 be awarded to Plaintiff.

DATED:      New York, New York
            January 31, 2025

VALERIE FIGUEREDO
United States Magistrate Judge

\*                    \*                    \*

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Jennifer L. Rochon. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**